GEORGE A. THOMPSON and JENNIE THOMPSON, Respondents, v. WALTER ARNOLD and LOREN P. ARNOLD, Appellants.

Kansas City Court of Appeals, May 2, 1921.

1. **ADOPTION:** Statute: Construction: Statutory Mode Must be Complied with. When a statute provides a mode for adoption, it is implied that it cannot be done legally in any other way, and there must be a substantial compliance with all of the essential requirements of the law under which such right is claimed and as it is in derogation of the common law such a statute should not be so narrowly construed as to defeat the manifest intent thereof.

2. **GUARDIAN AND WARD:** Parents are Natural Guardians: Adoption of Child Cannot be Had without Their Consent, Unless Rights Forfeited by Statute. The natural parents of a child are its natural guardians, and if one parent is deceased, the survivor is such natural guardian, and his child may not be adopted by others without his consent unless he has placed himself in such a position relative to such child as to have forfeited his rights thereto.

3. ————: ————: Statute: Evidence Insufficient to Show Nonsupport by Father so as to Warrant Adoption under Statute without his Consent. In a proceeding by the maternal grandparents of a child for its adoption where the parents had been divorced and the mother was dead, the evidence is *held* insufficient to show

that the father failed to support the child after the divorce. and, therefore, adoption of child could not, under section 1096, Revised Statutes 1919, be had without father's consent.

4. **PARENT AND CHILD: Custody: Welfare of Child Chief Consideration in Determining Final Custody.** The rights of the natural parent are supreme over others, but the welfare of the child is superior to the claims of the parent, and even to the wishes of the child itself; the child's welfare being the chief consideration in determining who shall have his final custody.

5. ———: ———: ———: **Father Held to be Entitled to Custody of Minor Child as Against the Maternal Grandparents.** Where parents were divorced, the wife having died, and father remarried, the father, desiring custody of minor child by first marriage, being a man of good habits, having a responsible position and maintaining a permanent home, is entitled to custody of the child as against the maternal grandparents.

Appeal from Circuit Court of Atchison County.—*Hon. John M. Dawson,* Judge.

REVERSED AND REMANDED (*with directions*).

*W. R. Littell* and *Craven & Bates* for respondent.

*Edward A. Setzler* for appellants.

ARNOLD, J.—This is an action for permission to adopt a minor child instituted in the juvenile division of the circuit court of Atchison county, Missouri.

Walter Arnold and Nellie Thompson were married on July 20, 1907, and lived together as husband and wife until the year 1914. They were the parents of two children, the elder of whom is Loren P. Arnold, now about twelve years of age. The other child died in 1914, while the parents were residing in Kansas City. The father, mother and boy Loren, accompanied the remains to Tarkio in Atchison county for burial. The husband returned to Kansas City but the wife and son remained for some weeks in Tarkio, at the home of the wife's parents, plaintiffs herein. She then returned

to Kansas City where the husband was seriously ill at the home of his parents, remained there a short time, sold the family household goods and, with her son Loren, returned to the home of her parents at Tarkio, where she continued to reside. In 1916 she filed a petition for divorce in Atchison County, on statutory grounds, the defendant filed no answer and a decree of divorce was granted to plaintiff by default. The decree allotted the care and custody of the child, Loren P. to the wife.

The husband remarried in 1917. Nellie Thompson Arnold died on November 14, 1918, at the home of her parents in Tarkio. After the death of his mother Loren remained with plaintiffs, at their request, in order to complete his school term, when, in June, 1919, his father met him in St. Joseph and brought him to Kansas City, where he remained with his father and his paternal grandparents and attended school in the fall, until December 22, 1919, when, without the knowledge or consent of his father, he was taken away from the school by his two aunts, daughters of plaintiffs herein, removed to the home of plaintiffs and kept there, against the will of his father.

On April 22, 1919, plaintiffs herein secured a decree in the juvenile division of the Atchison county circuit court, adopting said minor child. That decree, however, was by the said court later declared null and void and of no effect, for want of service on the father, Walter Arnold, and on January 26, 1920, a new petition for a decree of adoption was filed in the same court. Service was secured on defendant, Walter Arnold, through the sheriff of Jackson county. Both parties were present and represented by attorneys; the cause was heard by the court and a decree entered granting the prayer of adoption of plaintiffs. The defendant father appealed.

The petition alleges, among other things, the relationship of the parties as above stated; that defendant Loren P. Arnold is eleven years of age and without any legal or natural guardian for his person and that he has no estate, real or personal. The petition further

states that a decree of divorce was secured by Nellie Arnold, the mother of Loren P. Arnold, from Walter Arnold, upon the grounds of desertion and non-support, and that the care and custody of said minor child was awarded to the mother; recites the facts of the death of the mother Nellie Arnold, and states that the said father has not contributed to the support of, nor visited, nor evidenced any interest in the welfare of said minor child since the death of the mother, November 14, 1918. The petition further alleges that plaintiffs are of good moral character and have ample property out of which to clothe and educate said minor child, and that they will properly so clothe and educate him and attend to his moral and intellectual training.

The answer is first a general denial, and a special plea that said child was in defendant's care and custody and attending school in Kansas City, Missouri, from June to December 22, 1919, at which latter date plaintiffs took said child to Tarkio, Mo., without the knowledge or consent of the defendant father. The answer further states that defendant Walter Arnold has a good position and is able to provide for his wife and children, including defendant Loren P., and that he is desirous of having the care and custody of his said son. The answer further charges that the default decree of April 22, 1919, by which the care and custody of said minor child was awarded to plaintiffs, was *ex parte* and without notice or service of any kind on defendant Walter Arnold.

The reply is a general denial. Upon the issues thus made the case went to trial and resulted in a judgment and decree in favor of plaintiffs.

The decree states in part "that Walter Arnold has remarried since being divorced by his former wife and has children living from said second marriage, and that he is not a proper person to have the care and custody of said minor child. The court further finds that the petitioners are persons of good moral character and are sufficiently able to properly care for, maintain and edu-

cate said child, and that the welfare of the child will be promoted by sustaining the petition for adoption, and that such adoption should be made, and that the father Walter Arnold has neglected to provide proper care and maintenance for said child for the past two years, last preceding the filing of this suit."

The petition is based upon section 1672, p. 193, Session Acts of 1917 (sec. 1095, Rev. Stat. 1919), which provides: "The court shall not decree the adoption, except as hereinafter provided, unless in cases where the child or person to be adopted is of the age of twelve years or over and consents in writing to the adoption; and in cases where the child or person to be adopted is under the age of twenty-one years, the parents or surviving parent and guardian of the child, if any, consent in writing to the adoption; and the approval of the court shall be requisite in all cases, such approval being given or withheld as the welfare of the child or person sought to be adopted may, in the opinion of the court, demand. The consent of a parent of the child shall not be required if such person is insane, or is imprisoned under a sentence which will not expire until two years after the date of the filing of the petition; or if he or she willfully abandoned the child or neglected to provide proper care and maintenance for the two years last preceding such date."

When a statute provides a mode for adoption, it is implied that it cannot be done legally in any other way, and there must be a substantial compliance with all of the essential requirements of the law under which such right is claimed. However, such statute should not be so narrowly construed as to defeat the manifest intent of the law. [1 Cyc. 919.] In Sarazin v. Union Ry. Co., 153 Mo. l. c. 485, it is said: "Adoption is in derogation of the common law, and purely of statutory enactment, and like all other similar statutes must be strictly complied with."

It is fundamental law that the natural parents of a child are its natural guardians, and if one parent is

deceased the survivor is such natural guardian, and that his child may not be adopted by others without his consent unless he has placed himself in such a position relative to such child as to have forfeited his rights thereto. The statute under which this case is prosecuted specifies that "the court shall not decree the adoption except as hereinafter provided," and that "the consent of a parent of the child shall not be required . . . if he or she willfully abandoned the child or neglected to provide proper care and maintenance for the two years last preceding such date." Under this provision of the statute the petition alleges "that since the year 1914, when said minor child became a member of petitioners' family, his said father has not contributed to his support, has not visited him or evidenced any interest in his welfare, and has not done so since the death of his mother in 1918."

It will be observed that the petition does not charge abandonment, and our consideration is necessarily limited to the question of non-support. The contention that the consent of the father Walter Arnold was prerequisite to the adoption is not tenable, inasmuch as the charge of non-support of the child as contained in the petition, if proved, brings the matter within the statutory exemption above referred to. The testimony shows that the father, after the separation and divorce, sent money to the mother of the child through his own mother, in various amounts, in total $100 to $150. This statement was verified by receipts signed by the wife in the total sum of $60. Defendant and his mother testified that more was sent. This was attempted to be refuted by plaintiffs by intimating that these remittances were for money advanced by the wife in payment on the house purchased by them, but this denial is not convincing. The testimony further shows that during the period from June to December, 1919, defendant expended for the benefit of the child between $75 and $100.

Nor could defendant successfully be charged with failure to visit his son at the home of plaintiffs when

he testified, and it was not contradicted, that he was informed that he would be choked if he appeared at that home.

The decree of divorce did not relieve defendant from the duty of supporting his child, and the testimony tends to show that he did so contribute to the child's support, and he says he did so contribute to the best of his ability. The testimony further shows that defendant wanted his son with him after the death of the mother, and that the child did come to live with him after the close of his school in Tarkio in June, 1919, and remained with defendant attending school in Kansas City until December 22, 1919, when he was removed to Tarkio by two of his maternal aunts, without the knowledge and consent of the defendant father. During the time he was allowed to do so, the father, as the testimony shows, furnished the child a home, food and clothing, within his means.

The child's welfare should be the chief consideration in determining who shall have his final custody. The rights of the natural parent are supreme over others, but the welfare of the child is superior to the claims of the parent, and even to the wishes of the child itself.

The maternal grandparents, the plaintiffs herein, are shown to be good people and financially able to care for and provide for the child; yet the testimony shows that George A. Thompson is about 70 years of age and his wife a year or two his senior. That they own land in Illinois upon which they do not reside; that they have no permanent home now, but are at Excelsior Springs, Mo., for the benefit of the health of their invalid son who is about 40 years of age, and that Mrs. Thompson's health is not good.

So far as the record discloses, the father, Walter Arnold, is a man of good habits; he has a responsible position, is 32 years of age is married and has a child by his second wife, and he wants his son. We are of the opinion that plaintiffs have failed to substantiate their pleaded cause, that the judgment and decree were

for the wrong party, and that the father, Walter Arnold, should have been awarded the full care and custody of the boy, Loren P. Arnold, without condition or limitation. The judgment is reversed and the cause remanded with directions to enter a decree in accordance with this opinion.

All concur.